UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

SELECT PORTFOLIO SERVICING, INC., a
foreign corporation; and RESIDENTIAL
REALESTATE REVIEW, INC., a foreign
corporation,

                Plaintiffs,

vs.                           Case No. 3:06-cv-582-J-33MMH

EVALUATION   SOLUTIONS,   L.L.C.,   a
Florida limited liability company;
BRYAN F. GUCKAVAN, individually; and
JAMES A. MOORE, individually,

                Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Plaintiffs'
Amended Motion for Preliminary Injunctive Relief (Doc. # 4), filed
on July 10, 2006.  Defendants responded to this motion on July 18,
2006.  (Doc. # 10.)  The Court heard oral argument on Plaintiffs'
motion on July 20, 2006.  The Court required additional briefing on
this matter.  Plaintiffs filed a supplemental brief on July 27,
2006, (Doc. # 18), and Defendants filed a supplemental brief on
August 3, 2006, (Doc. # 22).  After receiving leave from this Court
(Doc. # 27), Plaintiffs filed a second supplemental brief on August
11, 2006, (Doc. # 28).  For the reasons stated below, the Court
denies the relief sought.

## I. Background

Plaintiffs in this case are two real estate companies. Plaintiff Select Portfolio Servicing, Inc., (SPS) services residential real estate mortgages. Plaintiff Residential Realestate Review, Inc., (RRR) provides to SPS and other customers assessments of the value of residential real estate. RRR provides these services by contacting realtors[1] in the same geographic area as the property to be evaluated. These realtors evaluate the property and report back to RRR; RRR, of course, pays them for their services. RRR's primary customer is SPS.[2] In fact, both RRR and SPS are owned by the same holding company, SPS Holding Corp.

There are three defendants in this case. Two are former employees of SPS, and the third is a new company these former employees formed. Defendant Bryan Guckavan was the vice president of affiliate operations for SPS and Defendant James Moore was the senior vice president of call center operations for SPS. Before resigning their positions, Guckavan and Moore together formed Evaluation Solutions, L.L.C., (Eval-Sol). Defendant Eval-Sol is a Florida limited liability company that provides the same services as RRR. As a result, Eval-Sol is a competitor of RRR.

---

[1]Plaintiffs refer to their contacts as "independent brokers/appraisers." (See, e.g., Doc. # 4, at 8.) For the sake of simplicity, though, the Court will refer to them simply as "realtors."

[2]Defendants state that SPS represents approximately 85% of RRR's business. (Guckavan Aff., Doc. # 22-2, at 4.)

Plaintiffs filed an eighteen-count complaint against Defendants on June 27, 2006. (Doc. # 1.) While this litigation stems from Plaintiffs' allegations that Defendants engaged in many forms of unlawful competition, the heart of the controversy is Plaintiffs' charge that Defendants used Plaintiffs' confidential information in competition against Plaintiffs.

The confidential information includes a list maintained by Plaintiff RRR. This list contained information on real estate brokers and appraisers in RRR's network. The parties refer to this as the Network List, and the Court adopts the parties' convention. Plaintiffs allege that the Network List is a competitively valuable trade secret, and that Defendants are using the Network List in their own business. In addition, Plaintiffs submit that Defendants have disparaged Plaintiffs and therefore harmed Plaintiffs' business.

On July 10, 2006, Plaintiffs took action to combat these two aspects of Defendants' alleged misconduct. Plaintiffs filed an amended[3] motion for preliminary injunction seeking to prohibit Defendants' alleged improper competition. Specifically, this motion requested a preliminary injunction prohibiting Defendants from "[c]ontacting any of SPS and RRR's clients or any agent, appraiser, broker or other person or entity listed or referenced in

_____

[3] The original motion for preliminary injunction -- filed on July 7, 2006 -- did not comply with a formal requirement, necessitating the filing of an amended motion.

3

the Network List," and forbidding them from making "derogatory and disparaging remarks about SPS and RRR." (Doc. # 4, at 5.)  In addition, the motion requested a constructive trust over the fruits of Defendants' "unlawful actions." Id.

Plaintiffs rely on four general theories justifying imposition of a preliminary injunction.  Because some theories are alleged in separate counts and against separate defendants, these theories are denominated as seven different counts in the Complaint.  The first theory is breach of fiduciary duty.[4]  The second is violation of the Uniform Trade Secrets Act.  The third is trade libel, violation of the Lanham Act, and unfair competition.[5]  The fourth is tortious interference with prospective advantage.

Before proceeding further, a word on Plaintiffs' corporate structure is appropriate.  SPS Holding Corporation is the parent of both SPS and RRR.  (Doc. # 4, at 2.)  SPS is a mortgage servicing company that services single-family, residential mortgage loans. Id. at 7.  SPS also services troubled loans.  Id.  RRR evaluates the value of residential real estate for SPS and other clients.[6]

---

[4]This theory is alleged in two separate counts, one each against Defendants Guckavan and Moore.

[5]This theory is divided into three different counts, one each for trade libel, violation of the Lanham Act, and unfair competition.

[6]Defendants aver that legal restrictions prevent SPS from profiting on these value assessments. (Guckavan Aff., Doc. # 10-4, at 1-2.)  Consequently, SPS is prohibited from charging its customers the market value of these assessments if the market value

4

Id.  SPS is RRR's primary client.  (Doc. # 22, at 16.)  SPS requires RRR's valuations because SPS provides services on mortgages that have been foreclosed.  To that end, it is important for SPS to know the value of properties subject to foreclosure.  RRR, in turn, wholly owns Residential Realestate Review Services, Inc., (RRRS).  RRRS exists for the sole purpose of hiring employees and leasing their services back to RRR.  (Marshall Aff., Doc. # 18-3, at 2.)

According to Plaintiffs' complaint, Guckavan worked for SPS and RRR in Pennsylvania, and when RRR relocated its principal place of business to Jacksonville, RRR paid to relocate Guckavan to Jacksonville.  (Doc. # 1, at 2.)  Guckavan was SPS's vice president of affiliate operations and also worked in SPS's accounting department.  Id.  Moore was employed as SPS's senior vice president of call center operations and was the second highest ranking corporate officer at SPS's Jacksonville office.  Id.

Plaintiffs allege that, while still employed by SPS and RRR, Guckavan and Moore established Eval-Sol, a business in direct competition with SPS and RRR.  Eval-Sol "is a real estate valuation company that assists clients in obtaining and generating

---

is above the actual cost to SPS of providing such assessments. (See Doc. # 10, at 3-4.)  To avoid such restrictions, SPS purchases these value assessments at market value from a separate entity: RRR.  Under that arrangement, SPS does not profit on the value assessments, and thus complies with the law, while SPS's sister company RRR profits from the valuations.

residential property Broker Price Opinions and appraisals." Id. at 3.

Plaintiffs allege that they required employees to sign acknowledgments of acceptable use for technology resources which stated that "Technology Resources may not be used to run or solicit outside business venturers." (See Doc. # 1, at 3-4.) The individual defendants also signed an agreement that they would not "directly or indirectly divulge, disclose, publish, disseminate, or otherwise communicate any Business Information to any person, firm, corporation, or other entity who is not at the time of disclosure an officer, director, or employee of [SPS] or who is not specifically authorized to receive it." (Doc. # 1, at 4.) The agreement contains a clause that SPS would be "entitled to an injunction restraining [Guckavan or Moore] from any actual or threatened breach of the Confidentiality Agreement." Id. at 5.

The complaint alleges that Defendants misappropriated SPS and RRR Network Lists and Software in contravention of their agreements. (Doc. # 1, at 7.)

According to Plaintiffs, Guckavan and Moore pursued the interests of their new company Eval-Sol while they were still employed with Plaintiffs. First, Guckavan and Moore asked SPS employees to leave SPS and join Eval-Sol. (Doc. # 1, at 8.) Guckavan and Moore filed articles of organization for Eval-Sol, and named themselves managers and members on November 14, 2005, while

6

still employed with Plaintiffs. Id. at 6. Further, while working for SPS in November 2005, Guckavan approached Craig Fickes, SPS's vice president of telecommunications, and advised Fickes that Guckavan did not like SPS's company telephone. Id. Guckavan suggested that he purchase his own telephone and requested permission to transfer SPS's company number to his personal phone. Id. SPS granted permission, and Guckavan used SPS's phone number to solicit and divert business away from SPS and RRR to Eval-Sol. Id. Guckavan tendered his resignation to SPS and RRR on February 21, 2006, and Moore tendered his resignation on March 31, 2006. Id. at 7.

Guckavan and Moore were successful in luring several of Plaintiffs' employees to work for Eval-Sol. The following SPS and RRR employees have left their former employers and joined Defendant Eval-Sol: (1) Debbie Ulerick (former manager of RRR quality control); (2) Jamien Durrence (former director of human resources); (3) Cindy Garrett (former manager of RRR client relations); (4) Jeannine Pierson (former manager of RRR operations); and (5) Lorie Cartier (former SPS administrative assistant). (Doc. # 1, at 8.) The complaint alleges that there may be more such employees. Id.

## II.   The Network List

Plaintiffs aver SPS and RRR maintain the Network List, which is a list of independent realtors who assist Plaintiffs in assessing the value of residential property. The Network List

7

contains contact information for realtors, and information on their prices.  In addition (and "of critical import"), the Network List contains ratings of these realtors.  Plaintiffs allege that the Network List "gives SPS and RRR a distinct advantage over any competitor."  (Doc. # 1, at 5.)  As such, Plaintiffs claim the Network List is protected confidential information under the confidentiality agreements Guckavan and Moore executed.

Plaintiffs submit that Guckavan and Moore took the Network List with them when they left the employ of Plaintiffs.  Plaintiffs point to Eval-Sol's website, which states that:

> Our vast network of resources includes over 20,000 brokers, agents, and appraisers covering the entire U.S. and its territories.  It's one of the most comprehensive networks in the industry, and it offers "on the ground" local market specialists who understand the specific market dynamics of your subject property.  Our commitment to you is 100% order completion -- GUARANTEED.

(Doc. # 1, at 7.)  Plaintiffs argue that the only way Defendants could have built such a large network in the short time Eval-Sol has been in business is by stealing Plaintiffs' Network List.  Id. As far as this Court can determine, this is the extent of Plaintiffs' evidence that Defendants misappropriated the Network List.  Plaintiffs have brought forward no direct proof that Defendants have misappropriated the Network List.

Defendants vigorously deny that they have used, or even possess, the Network List.  Defendants argue that Eval-Sol has a network of only about 1,500 brokers and appraisers, and that the

8

claim on Eval-Sol's website of a network 20,000 strong is mere sales puffery. (Doc. # 10, at 6.) In contrast to the evidence upon which Plaintiffs rely, Defendants present sworn affidavits that they have not used, and do not possess, the Network List. (Guckavan Aff., Doc. # 10-4, at 2; Moore Aff., Doc. # 10-5, at 2.) Defendants assert Eval-Sol's network of 1,500 was built through "(1) basic Internet searches (e.g., www.realtor.com; Yahoo; Google; etc.), (2) requests from brokers/appraisers to be included in Defendants' network, and (3) Defendants' personal knowledge of brokers and appraisers in the Appraisal Business." (Doc. # 10, at 6.)

Moreover, Defendants assert that the Network List would have no value to them because the Network List is just an outdated list of realtors readily available on public websites. (Doc. # 22, at 4-5.) Defendants argue that the real value of the Network List derives from the administrative simplicity of contacting realtors who already have a relationship with Plaintiffs. Id. Listed realtors have already set up accounts with Plaintiffs, so Plaintiffs' employees need not set up new accounts when they hire listed realtors. Id. Because Eval-Sol has not set up accounts with realtors listed on the Network List, Defendants assert possession of the list would not provide Eval-Sol with any value. Consequently, Defendants argue that they would not use the list even if they had it.

Given the evidence on each side of this issue, the Court finds Plaintiffs have failed to establish that Eval-Sol possess or uses the Network List.  Against Defendants' sworn denials, Plaintiffs can produce only an assertion based upon information and belief.[7] Plaintiffs' conjecture does not outweigh Guckavan's and Moore's sworn statements in their respective affidavits, especially in light of the argument that the Network List would have no value to Defendants.

### III.  Guckavan's Employment

There is some disagreement over which corporation employed Guckavan.  Plaintiffs assert that Guckavan was both a de jure and de facto officer and employee of RRR.  (Doc. # 28, at 4-5.) Defendants argue that Guckavan was never employed by Plaintiff RRR. Instead, Guckavan asserts he was employed by SPS.  (Guckavan Aff., Doc. # 10-4, at 2.)  By letter dated July 6, 2004, SPS's executive vice president of human resources offered Guckavan employment in SPS's Jacksonville office.  (Doc. # 22-8.)  All the employment documents in the record show an employment relationship between Guckavan and SPS.[8]  (See Doc. # 1-2; Doc. # 1-3; Doc. # 1-4.)

---

[7]Of course, the Court recognizes that Plaintiffs may be able to attain ultimate success on the merits.  As this litigation progresses, Plaintiffs may be able to marshal additional support for their cause.  But, at the outset, Plaintiffs have not shown a substantial likelihood of success.

[8]Some employment documents indicate they are used by Fairbanks Capital Corp.  SPS formerly used the name Fairbanks Capital Corp. (Doc. # 10-2.)

Guckavan's IRS Form W-2 was issued by a company other than RRR.[9] (Doc. # 18.)

Florida law requires some fiduciary relationship between a corporation and an individual before the individual can be charged with a breach of fiduciary duty to the corporation. See Schein v. Chasen, 313 So. 2d 739 (Fla. 1975) (holding that mutual fund managers who were not directors, officers, employees, or agents of the corporation could not be charged with a fiduciary duty to the corporation). Because Plaintiffs have not shown a fiduciary relationship between Guckavan and RRR, Plaintiffs' claims for breach of fiduciary duty cannot stand inasmuch as they rely on a fiduciary relationship between Guckavan and RRR.[10]

_____

[9]In fact, Guckavan's Form W-2 was issued by RRRS, a corporation whose sole purpose was to provide employee leasing services to RRR. (Doc. # 18.)

[10]For example, if Guckavan was an officer of RRR, his formation of Eval-Sol while he was still an officer of RRR would likely be a breach of his fiduciary duty to RRR. See Treasure Salvors, Inc. v. Unidentified, Wrecked & Abandoned Sailing Vessel, 556 F. Supp. 1319, 1339 (S.D. Fla. 1983) ("A fiduciary is held to the punctilio of an honor the most sensitive. . . . [An agent] must not compete with his principal concerning the subject matter of the agency." (internal quotation marks and citations omitted)); Singletary v. Mann, 24 So. 2d 718, 723 (Fla. 1957) ("[N]either a partner, an agent, servant nor an employee may without the partner's or master's or employer's knowledge and consent enter into any business in competition with his partner, master or employer and make and keep for his individual use and benefit any profit accruing from such transaction."); see also Gonzalez ex rel. Colonial Bank v. Chillura, 892 So. 2d 1075, 1077 (Fla. 2d DCA 2004) (suggesting that it would be a breach of fiduciary duty for a corporate officer to covertly form another company that would compete with the corporation). However, if Guckavan had no fiduciary duty to RRR, no fiduciary duty would be breached by

**A.  Plaintiffs Have Not Shown that Guckavan Was an Officer of RRR**

In Florida, an individual is a corporate officer when the individual has been appointed a corporate officer under the procedures set up in the corporation's charter and bylaws.  The nature of the work performed by the individual is not determinative of his status as a corporate officer.  Bruce v. Travelers Ins. Co., 266 F.2d 781, 784 (5th Cir. 1957) ("The distinction between an agent or employee and an officer is not determined by the nature of the work performed, but by the nature of the relationship to the particular corporation.").  In Bruce, the Fifth Circuit decided that a responsible employee of an oil company was not an "executive officer" within the meaning of an insurance contract.  Id. at 784-86.  To reach this conclusion, the Fifth Circuit examined the oil company's articles and bylaws and determined that the responsible employee was not an officer of the corporation.  Id. at 784-85.  The Fifth Circuit quoted a Georgia case:

> One distinction between officers and agents of a corporation lies in the manner of their creation.  An officer is created by the charter of the corporation, and the officer is elected by the directors or the stockholders.  An agency is usually created by the officers, or one or more of them, and the agent is appointed by the same authority.  It is clear that the two terms officers and agents are by no means interchangeable.

Id. at 785 (quoting Vardeman v. Penn Mut. Life Ins. Co., 54 S.E. 66

---

competition with RRR.

(Ga. 1906)); see also Lemmons v. Zurich Ins. Co., 403 F.2d 512 (5th Cir. 1968) (examining bylaws of corporation to determine who was an officer of the corporation).  Also, the question of corporate officer status is a question of law for the Court to decide. Lemmons, 403 F.2d at 514.

Under the internal affairs doctrine, the law of the state of incorporation normally controls the affairs internal to the corporation.  Chatlos Found, Inc. v. D'Arata, 882 So. 2d 1021, 1023 (Fla. 5th DCA 2004); see also Hood Bros. Partners, L.P. v. USCO Distrib. Servs., 140 F.3d 1386, 1388 n.1 (11th Cir. 1998); Belize Telecom Ltd. v. Belize, No. 05-20470-CIV, 2005 U.S. Dist. LEXIS 18586 at *55 (S.D. Fla. Aug. 16, 2005).  RRR is a Delaware corporation.  (Doc. # 28, at 3 n.1.)  Accordingly, the law of Delaware may govern the determination of whether Guckavan is an officer of RRR.  For that reason, the Court analyzes this issue under Delaware law as well.  Section 142 of the Delaware Corporation Code states:

> (a) Every corporation organized under this chapter shall have such officers with such titles and duties as shall be stated in the bylaws or in a resolution of the board of directors which is not inconsistent with the bylaws .
> . . .
>
> (b) Officers shall be chosen in such manner and shall hold their offices for such terms as are prescribed by the bylaws or determined by the board of directors or other governing body.  Each officer shall hold office until such officer's successor is elected and qualified or until such officer's earlier resignation or removal. Any officer may resign at any time upon written notice to the corporation.

8 Del. C. § 142.  This statute strongly suggests that the question of whether an individual is an officer is resolved not by an analysis of the functions the individual performed, but by a determination of whether the corporation properly appointed the individual an officer of the corporation.

In this case, there is scant evidence showing that Guckavan was an officer of RRR.  An individual is a corporate officer when the corporation properly appoints the individual to a corporate office.  As such, the question of whether someone is a corporate officer is easily answered by reference to the formal actions of the corporation.  Plaintiffs could have established that Guckavan was an officer of RRR by showing that Guckavan was appointed an officer in accordance with the corporate bylaws.  No such evidence has been forthcoming.  Thus, the Court finds Plaintiffs have failed to establish that Guckavan was an officer of RRR.  Plaintiffs simply have not produced any evidence of a formal act by RRR appointing Guckavan to a corporate office.

### B.  Plaintiffs Have Not Shown that Guckavan Was a de Facto Officer of RRR

The facts in the record so far do not indicate that Guckavan was a de facto corporate officer.  There are two tests that must be satisfied before one will be found to be a de facto officer.  First, the apparent officer must "actually assume[] possession of an office under the claim and color of an election or appointment . . . ."  In re Walt Disney Derivative Litigation, 37 Employee

14

Benefits Cas. 2756 (Del. 2006); see also South Seas Corp. v. Sablan, 525 F. Supp. 1033, 1038 (D.N. Mariana Is. 1981) ("A de facto officer is one who actually possesses an office under color of election or appointment . . . ."). Second, the apparent officer must "actually discharg[e] the duties of that office, but for some legal reason lack[] de jure legal title to that office." In re Walt Disney Derivative Litigation; see also Sablan, 525 F. Supp. at 1038 (stating that de facto officer must "continuously exercise[] [the office's] functions"). Thus, the corporation must take some action that looks like a formal appointment or election, and the apparent officer must actually exercise the duties of the office.

In this case, the record can certainly be read to support the claim that Guckavan exercised the duties of an RRR officer. Plaintiffs have presented evidence that Guckavan represented himself as a vice president of RRR, and provided services to RRR. (See Doc. # 28, at 1.) Indeed, Guckavan himself has acknowledged that he provided services to RRR. (Guckavan Aff., Doc. # 22-2, at 1.) However, nothing in the record supports the claim that there was any election or appointment of Guckavan to an office in RRR. As a result, this Court determines Plaintiffs have failed to establish that Guckavan was a de facto officer of RRR. Plaintiffs simply have not produced any evidence that Guckavan held an RRR office under color of election or appointment.

15

**C.  Plaintiffs Have Not Shown that Guckavan Was an Employee of RRR**

In Florida, the master and servant, or employer and employee,[11] relationship requires control and direction by the employer.  Boca Raton v. Mattef, 91 So. 2d 644, 647 (Fla. 1956).  This control and direction must be more than mere general control.  In Mattef, the Florida Supreme Court stated:

> Under the law of Master and Servant the relationship of employer and employee requires control and direction by the employer over the conduct of the employee.  This exercise of control over the person as well as the performance of the work to the extent of prescribing the manner in which the work shall be executed is the ultimate test of the nature of the relationship between employer and employee.

Id.; see also Santa Rosa Island Auth. v. F. Rust Smith & Sons, Inc., 303 F.2d 576, 579 (5th Cir. 1962) ("He is deemed to be the master who has the supreme choice, control, and direction of the servant, and whose will the servant represents, not merely in the ultimate results of the work, but in all the details.").  Without control, no employment relationship will be found.  Ware v. Money-Plan Int'l, Inc., 467 So. 2d 1072, 1073–74 (Fla. 2d DCA 1985).

There are other elements to the employment relationship, as well.  In Saudi Arabian Airlines Corp. v. Dunn, 438 So. 2d 116 (Fla. 1st DCA 1983), the Court articulated four elements of the relationship:

---

[11]"The words 'employer-employee' are an outgrowth of the terms 'master' and 'servant.'"  Saudi Arabian Airlines Corp. v. Dunn, 438 So. 2d 116 (Fla. 1st DCA 1983).

16

> At common law, four elements were considered in making a
> determination whether a master and servant relationship
> exists -- the selection and engagement of the servant,
> the payment of wages, the power of dismissal, and the
> control of the servant's conduct -- the essential element
> being the right of control and the right to direct the
> manner in which the work shall be done, the payment of
> wages being the least important factor.

Saudi Arabian Airlines Corp., 438 So. 2d at 120.  In Ware v. Money-

Plan Int'l, Inc., the Court  recognized nine factors in addition to

the control element:

> (1) the extent of control which, by the agreement, the
> master may exercise over the details of the work; (2)
> whether the one employed is engaged in a distinct
> occupation or business; (3) whether in the locality, the
> work is usually done under the direction of an employer
> or done by a specialist without supervision; (4) the
> skill required in the particular occupation; (5) whether
> the employer or the workman supplies the
> instrumentalities, tools, and place of work for the
> person doing the work; (6) the length of time the person
> is employed; (7) whether the method of payment is by the
> time or by the job; (8) whether the work is a part of the
> regular business of the employer; (9) whether the parties
> believe they are creating the relationship of master and
> servant.

Ware, 467 So. 2d at 1074.

Thus, the extent of control RRR had over Guckavan's work is

the most important element in the determination of whether Guckavan

was an employee of RRR.  Plaintiffs, however, have not put forth

evidence of the extent of control RRR had over Guckavan.  In fact,

Plaintiffs have done no more than merely assert that Guckavan was

an employee of RRR.  Until Plaintiffs are able to make a showing

that Guckavan was an employee under the legal framework discussed

above, this Court must conclude that Guckavan was not an employee

17

of RRR.

**IV.   Plaintiffs' Motion for Preliminary Injunction**

   **A.   Legal Standard for Preliminary Injunction**

   A party seeking a preliminary injunction must demonstrate the following: (1) a substantial likelihood the plaintiff will prevail on the merits; (2) a substantial threat that plaintiff will suffer irreparable injury if interlocutory injunctive relief is not granted; (3) that the threatened injury to plaintiff outweighs any threatened harm an injunction may do to defendant; and (4) that granting a preliminary injunction will not dis-serve the public interest.  See McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998) (citing All Care Nursing Services, Inc. v. Bethesda Memorial Hospital, Inc., 887 F.2d 1535, 1537 (11th Cir. 1990)).

   There are eighteen counts in the complaint.  In the motion for preliminary injunction though, Plaintiffs stated:

> SPS and RRR are substantially likely to prevail on all their claims.  Nevertheless, for purposes of this Motion For Preliminary Injunctive Relief, SPS and RRR need only show the likelihood of success as to the causes of action permitting injunctive relief.  As such, for purposes of obtaining this preliminary injunction, SPS and RRR limit their analysis to Counts  I [Breach of Fiduciary Duty as to Guckavan], II [Breach of Fiduciary Duty as to Moore], V [Violation of Uniform Trade Secrets Act], VI [Violation of Lanham Act], VII [Trade Libel], VIII [Unfair Competition], and XVII [Interference with Prospective Economic Advantage].

(Doc. # 4, at 11.)  The seven counts are best understood as falling under four general theories supporting issuance of a preliminary

injunction: (1) Breach of Fiduciary Duty, (2) Violation of the Uniform Trade Secrets Act, (3) Trade Libel and Unfair Competition, and (4) Interference with Prospective Advantage.  Each of these theories is discussed below.

The Eleventh Circuit recognizes that "a preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly establish[es] the 'burden of persuasion' as to each of the four prerequisites." Seigel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (citing Robertson, 147 F.3d at 1306).  Morever, the Eleventh Circuit also recognizes that the grant of a preliminary injunction is "the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion."  Id. at 1180 (citing United States v. Lambert, 695 F.2d 536, 539 (11th Cir. 1983) (quoting Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975)).

### B.  Likelihood of Success on the Merits

#### 1.  Breach of Fiduciary Duty -- Counts I & II

Plaintiffs allege that Guckavan and Moore breached their fiduciary duties to SPS and RRR in engaging in the acts alleged in the complaint.  As explained in Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330 (M.D. Fla. 2006), the elements of a claim for breach of a fiduciary duty are "(1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach."  Id. at 1342.

As discussed above, the Court determines Plaintiffs have not established that Guckavan and Moore were officers or employees of RRR.   Thus, any fiduciary duty would not be founded in an employment relationship with RRR.  Plaintiffs have failed to allege any other source of a fiduciary duty.[12]  Consequently, the Court finds Plaintiffs have not established that they are substantially likely to prevail on the merits of their claims for breach of fiduciary duty.

### 2.  Florida Uniform Trade Secrets Act -- Count V

Plaintiffs allege that Defendants violated Florida's Uniform Trade Secrets Act, Florida Statute § 688.001, et seq.  Because this Court finds Plaintiffs have failed to establish that Defendants have misappropriated any trade secrets, the Court cannot find that Plaintiffs are substantially likely to succeed on this claim.

Under the Trade Secrets Act, "'[m]isappropriation' means . . . [a]cquisition of a trade secret of another by a person who knows or has reason to know that the secret was acquired by improper means . . . ."  Fla. Stat. § 688.002(2)(a) (West 2003).  "'Improper means' includes theft, bribery, misrepresentation, breach or

---

[12]In addition, Defendants strenuously deny the factual underpinnings of some of the alleged breaches.  Defendants do not deny that they formed Eval-Sol before resigning their positions with SPS.   Thus, Defendants have admitted to acts that would constitute a breach of any existing fiduciary duty not to compete with RRR before Defendants resigned their positions with SPS.  On the current state of the record, though, there is no reason to think such a duty existed.  Plaintiffs are, of course, free to make proper arguments for the existence of such a duty.

inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means."  Fla. Stat. § 688.02(1) (West 2003).  The Act defines a "trade secret" as

> information, including a formula, pattern, compilation, program, device, method technique, or process that . . . [d]erives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002(4) (West 2003).  In addition, the Act contains a specific provision for the grant of injunctive relief.  Section 688.003 provides:

> Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

Fla. Stat. § 688.003(1) (West 2003).

There are two elements to a claim under Florida law for misappropriation of trade secrets.  "To show misappropriation of a trade secret under Florida law, a claimant must prove: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated."  <u>Border Collie Rescue, Inc. v. Ryan</u>, 418 F. Supp. 2d 1330, 1338 (M.D. Fla. 2003) (citing <u>Del Monte Fresh Produce Co. v. Dole Foods Co.</u>, 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001).

21

As discussed above, the Court finds Plaintiffs have not established that Defendants possess the Network List. Accordingly, the second element of a claim for misappropriation of trade secrets is not satisfied by Plaintiffs' allegation that Defendants misappropriated the Network List.

A generous reading of the complaint also reveals an allegation that Defendants' misappropriated Plaintiffs' proprietary software. (See Doc. # 1, at 8.) This allegation is well countered by affidavits of Defendants. (See Doc. # 10-4, at 2; Doc. # 10-5, at 2.) Without more, Plaintiffs' allegations, viewed in light of Defendants' sworn denials, are insufficient to convince the Court that Plaintiffs are substantially likely to meet the second element of their claim for misappropriation of trade secrets.

### 3. Trade Libel and Unfair Competition -- Counts VI, VII, & VIII

#### A. Lanham Act

To prevail on a claim for false advertising under 15 U.S.C. § 1125(a)(1)(B) (Lanham Act), a plaintiff must adduce evidence of the following: (1) the advertisements of the opposing party are false or misleading; (2) the advertisements actually deceived consumers or had the tendency to deceive a substantial portion of the targeted audience; (3) the deception is material, meaning it is likely to influence purchasing decisions; (4) the defendant's advertised products traveled in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the

false or misleading advertisements by causally related declining sales or loss of goodwill. Hickson Corp. v. N. Crossarm Co., Inc., 357 F.3d 1256, 1261 (11th Cir. 2004); Tire Kingdom, Inc. v. Morgan Tire & Auto, Inc., 915 F. Supp. 360, 364 (S.D. Fla. 1996).

There are two distinct types of Lanham Act claims: (1) those based on literally false representations and (2) those based on implicitly false representations, i.e., those that may technically be true or ambiguous, but implicitly convey a false impression. Hickson Corp., 357 F.3d at 1260-61. In the absence of literal falsity, an additional burden is placed upon a plaintiff to show that the advertisement conveys a misleading message to consumers, and that the relevant consumer population was actually deceived. Herman Miller, Inc. v. Palazzetti Imports & Exports, Inc., 270 F.3d 298, 323 (6th Cir. 2001). In implicit falsehood cases, Eleventh Circuit precedent requires the plaintiff to present evidence of deception in the form of consumer surveys, market research, expert testimony, or some other appropriate form. See Hickson, 357 F.3d at 1261 (citing Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002)). Some courts have held that a plaintiff asserting a claim for permanent injunctive relief need not show that consumers were actually deceived, but only that the false advertisement has a tendency to deceive. Herman Miller, 270 F.3d at 323; Toro Co. v. Textron, Inc., 499 F. Supp. 241, 251 (W.D. Tex. 1980).

23

Plaintiffs seek "an injunction enjoining [Defendants] from violating the Lanham Act . . . ." Id. With a very generous reading of the filings in this case, the Court discerns a properly pleaded claim for violation of the Lanham Act. Further, the Court can discern that Plaintiffs have a substantial likelihood of satisfying the first element of a Lanham Act claim. Specifically, it appears that the statement on Eval-Sol's website that Eval-Sol has a network 20,000 strong is literally false. In fact, Defendants themselves have acknowledged the falsity of this statement. (See Doc. # 10, at 6, "To date, Defendants have created their own network of approximately 1,500 real estate brokers and appraisers.") However, the Court cannot find that the Plaintiffs have established a substantial likelihood of success on the merits of this claim. Plaintiffs have failed to present evidence on the other elements of their Lanham Act claim.

## B.  Trade Libel

To state a valid claim for trade libel, Plaintiffs must allege the following elements:

> (1) a falsehood; (2) has been published or communicated to a third person; (3) when defendant-publisher knows or has reason to know that it will likely result in inducing others not to deal with the Plaintiff; (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.

Border Collie Rescue, Inc. v. Ryan, 418 F. Supp. 2d 1330, 1348 (M.D. Fla. 2006) (citing Stewart Title Guar. Co. v. Title Dynamics,

Inc., 2005 U.S. Dist Lexis 18473 (M.D. Fla. 2005)).

The Plaintiffs' claim for preliminary injunctive relief under this cause of action fails because Plaintiffs have not established a substantial likelihood of succeeding on any of the elements of this cause of action. Plaintiffs' motion for preliminary injunction alleges that one of Plaintiffs' clients "had met with Guckavan and Moore and was under the impression that RRR lost 'all its "A" players.'" (Doc. # 4, at 9.) At most, Plaintiffs have presented information sufficient to support an inference that Defendants made a statement that caused the client to have this impression. This is not sufficiently sturdy ground to support a preliminary injunction.

## C.  Unfair Competition

Plaintiffs have not established that they are substantially likely to succeed on the merits of their unfair competition claim. In Petmed Express, Inc. v. Medpets.com, Inc., 336 F. Supp. 2d 1213 (S.D. Fla. 2004), the Court articulated the burden upon Plaintiffs:

> To prevail on a Florida common law unfair competition claim, a plaintiff must prove that (1) the plaintiff is the prior user of the trade name or service mark, (2) the trade name or service mark is arbitrary or suggestive or has acquired secondary meaning, (3) the defendant is using a confusingly similar trade name or service mark to indicate or identify similar services rendered (or similar goods marketed) by it in competition with plaintiff in the same trade area in which plaintiff has already established its trade name or service mark, and (4) as a result of the defendant's action or threatened action, consumer confusion as to the source or sponsorship of the defendant's goods or services is likely.

*Id.* at 1219 (citing *American United Life Ins. Co. v. American United Ins. Co.*, 731 F. Supp. 480 (S.D. Fla. 1990)).  Plaintiffs have not addressed any arguments to these elements.  As such, the Court finds that Plaintiffs have not established that they are substantially likely to succeed on the merits of this claim.

### 4.  Interference with Prospective Economic Advantage -- Count XVII

> To establish a claim for tortious interference with an advantageous business or contractual relationship, a party must prove: (1) the existence of a business relationship or contract; (2) the defendant's knowledge of the relationship; (3) an intentional and unjustified interference with that relationship by the defendant which induces or otherwise causes nonperformance; and (4) damages resulting from the tortious interference.

*Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1343 (M.D. Fla. 2006) (citing *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812 (Fla. 1994)).

First, Plaintiffs charge that Defendants are using Plaintiffs' Network List in Eval-Sol's business.  Because this allows Eval-Sol to compete with Plaintiffs, Plaintiffs allege this constitutes tortious interference with Plaintiffs' prospective economic advantage.  Second, Plaintiffs allege, "[t]here is evidence that all Defendants are disparaging SPS and RRR's services to SPS and RRR's former, current, and potential clientele." (Doc. # 4, at 16.)  The only such evidence Plaintiffs point to is the impression of a client that RRR had lost its A team.  In addition, Plaintiffs

26

assert that Defendants have caused several SPS and RRR clients to work with Eval-Sol.  (Doc. # 4, at 16.)  As support for that assertion, Plaintiffs cite to an allegation in the complaint that does not actually support the assertion.  (See Doc. # 4, at 16-17.) Rather, the cited paragraph alleges, "several SPS and RRR network appraisers have informed SPS and RRR that they are now working with [Eval-Sol]." (Doc. # 1, at 7.)

Plaintiffs have not established that they are substantially likely to succeed on the merits of their claim for tortious interference.  Consequently, the alleged misconduct will not support a preliminary injunction.

## C.  Irreparable Injury to Plaintiffs

Plaintiffs argue that there is a presumption of irreparable injury to Plaintiffs because former employees used a specific trade secret in their new employment.  See Lovell Farms v. Levy, 641 So. 2d 103, 105 (Fla. 3d DCA 1994).  For the presumption of irreparable injury to attach, the Court must find that Defendants misappropriated a trade secret.  As discussed above, the Court finds Plaintiffs have not established that Defendants misappropriated any of Plaintiffs' trade secrets.  Consequently, the presumption of irreparable injury does not attach.  Plaintiffs make no further argument for a finding of irreparable injury.  (See Doc. # 4.)  Therefore, the Court finds that Plaintiffs have not shown that they will be irreparably injured if the Court declines

to enter a preliminary injunction.[13]

## D.  Balancing of the Hardships

Plaintiffs argue that the threatened injury to plaintiff outweighs any harm a preliminary injunction would do to Defendants. Plaintiffs state:

> Guckavan and Moore and Eval-Sol cannot argue, in good faith, that a preliminary injunction would result in hardship to them.  The Defendants are conducting a business as a result of their illegal usurpation and misappropriation of SPS and RRR's vitally important proprietary information and property. . . . Any argument that the defendants will suffer hardship as a result of a preliminary injunction cannot withstand the simple straight face test.

(Doc. # 4, at 18.)  Because the Court finds Plaintiffs have not established that Defendants have misappropriated Plaintiffs' property, the Court declines to accept Plaintiffs' argument on this matter.  Instead, the Court finds that a preliminary injunction would harm Defendants.

Plaintiffs have not asked for a preliminary injunction that merely bars Defendants from using the Network List.  Rather, Plaintiffs have requested an injunction that bars Defendants from contacting anyone who is on the list.  These are very different. While an injunction forbidding Defendants to use the Network List

---

[13]The Court notes that the standard for a finding of irreparable injury is high. Preliminary injunctions should only be entered where failure to maintain the status quo would render the Court impotent to issue a meaningful remedy after adjudication on the merits. <u>Canal Auth. of Fla. v. Callaway</u>, 489 F.2d 567, 572-73 (5th Cir. 1974).

would do Defendants no harm if they do not have the list, an injunction forbidding Defendants to contact anyone who happens to be on the list would potentially deny Defendants a large group of potential business contacts. Accordingly, the Court finds that the balance of the hardships tilts against the entry of a preliminary injunction, especially in light of the weak assertion of irreparable injury and the evidence so far presented.

### E.  Public Interest

The public interest appears evenly balanced in the case at bar.  If Defendants were contractually bound to keep the Network List confidential, the public interest would support an injunction forbidding Defendants to use such confidential information.  <u>See</u> <u>Burger King Corp. v. Lee</u>, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991) ("The public interest is certainly disserved by Defendant's continuing disregard of his contractual commitments and undertakings.").  On the other hand, Plaintiffs have failed to convince the Court that Defendants have breached fiduciary duties, disparaged Plaintiffs, violated the Lanham Act, misappropriated the Network List or other trade secrets, or tortiously interfered with Plaintiffs' prospective economic advantage.  The public interest would certainly not support the expenditure of judicial resources to enjoin wrongful behavior where there is little evidence of existing or likely wrongful behavior.

Accordingly, it is now

**ORDERED**, **ADJUDGED**, and **DECREED**:

Plaintiffs' Amended Motion for Preliminary Injunctive Relief (Doc. # 4) is **DENIED**.

**DONE** and **ORDERED** in Jacksonville, Florida, this <u>20th</u> day of September, 2006.

_____
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:
All Counsel of Record